UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 414-1 |
| vs. | ) | Judge Matthew F. Kennelly |
| | ) | |
| FRED KING | ) | |

**GOVERNMENT'S OBJECTION TO DEFENDANT FRED KING'S
PRESENTENCE INVESTIGATION REPORT
AND RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The UNITED STATES of AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, submits the following objection to defendant Fred King's Presentence Investigation Report (PSR) and response to defendant's sentencing memorandum. The government respectfully seeks a two-level upward adjustment to King's base offense level for his use of a minor to commit the bank robbery, pursuant to U.S.S.G. § 3B1.4. As explained below, a sentence within the advisory Guidelines range is sufficient, but not greater than necessary, to account for King's criminal conduct, history, and characteristics, and to satisfy the policies set forth in the Guidelines and in 18 U.S.C. § 3553(a).

## I. BACKGROUND

On November 25, 2009, King pleaded guilty to conspiracy to commit bank robbery and bank robbery. Specifically, on May 6, 2008, defendants Fred King, Steve Austin, and a third individual drove from Chicago to Evanston, looking to rob a retail store. While driving, King and Austin decided to rob the First Bank and Trust in Evanston. King, Austin, and the third individual entered the bank with the intent to rob it but left without doing so.

After that first failed attempt, King and Austin decided to rob the bank in the next day or two with the help of Individual A, who was a minor (date of birth XX-XX-1991) and the niece of

Austin's girlfriend. *See* Interview Report of Individual A, Bates 23, attached hereto as Exhibit 1. According to Individual A, Austin and King approached her with the idea of robbing the bank the day before they did so. *Id.* Austin told Individual A that her role during the robbery was to "mix it up." *Id.* at 24. Individual A said that she needed think about the offer during the night and would decide the next morning. Individual A said that King and Austin's proposal was a serious one for her because she had not been involved in any prior significant criminal activity. *Id.* On the morning of the bank robbery, Austin told Individual A that she should go through with the plan and made robbing the bank sound attractive. *Id.* Individual A agreed to participate. *Id.* Later that morning, King, Austin, and Individual A robbed the First Bank and Trust, taking approximately $7,238, which they divided among themselves. Of the more than $7,000 that they stole, Individual A said that she received $1,000. *Id.* at 25.

## II.    OBJECTION TO THE PSR[1]

Guideline § 3B1.4 provides a two-level increase to the base offense level "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense. . . ." U.S.S.G. § 3B1.4. Application note 1 defines "[u]sed or attempted to use" as including "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." As explained by Individual A, King and Austin recruited her into participating in the bank robbery. They made robbing the bank sound attractive, and they ultimately paid her $1,000 for her participation. At the time she agreed to do so and participated in the bank robbery, Individual A was 17. Guideline § 3B1.4

---

[1]The government acknowledges and apologizes to the Court for its failure to file the objection seven days prior to the defendant's sentencing.

therefore applies.

In declining to apply this enhancement, the probation officer stated that it was unclear whether the minor became involved in the robbery voluntarily or if she was directed, intimidated, or recruited into becoming involved. PSR at lines 146-47. Because King, Austin, and Individual A split the proceeds of the bank robbery, the probation officer thought that Individual A seemed like a "partner." PSR at lines 148-150. The probation officer then incorrectly concluded that § 3B1.4 requires some affirmative act beyond acting as a partner with the minor in a crime.

In *United States v. Bowlin*, the Seventh Circuit explained that "use" of a minor within the meaning of § 3B1.4 "can be established both when the minor is a partner in the criminal offense ... as well as when the minor's role is subordinate to that of the criminal defendant." 534 F.3d 654, 661 (7th Cir. 2008) (internal quotations and citations omitted). *See also United States v. Gatson*, 342 Fed. Appx. 206, 2009 WL 2488379 (7th Cir. Aug. 17, 2009) (unpublished) (holding that § 3B1.4 applied because defendant solicited his a minor, the defendant's brother, to act as the getaway driver in the bank robbery).

Here, Individual A was both a partner in the commission of the bank robbery and a subordinate to King and Austin. During the commission of the robbery, Individual A acted as partner of both King and Austin, entering the bank and accompanying Austin as he presented the demand note. She then received less of the robbery's proceeds than either King or Austin, only getting approximately $1,000. (In their interviews with the FBI, King and Austin said that they evenly divided the proceeds of the robbery.) Regardless of whether Individual A was a partner or a subordinate and how much of the robbery's proceeds she received, King encouraged her to participate in and used her to commit the bank robbery. Section 3B1.4 therefore applies.

**III. GUIDELINES CALCULATION**

Other than the above-noted objection, the government agrees with the Probation Officer's Guidelines calculation. To the extent that the Court declines to apply the adjustment for the use of a minor, King's offense level remains a level 29 because he is a career offender.

King has eleven adult criminal convictions and eighteen criminal history points. *See* PSR at 193-268. Among his convictions are two convictions for armed robberies that occurred prior to the instant robbery (Case Nos. 95CR0451101 and 08CR1035201) and a conviction for residential burglary (06CR0113401). Because the defendant was eighteen years old at the time he committed the bank robbery in this case, bank robbery is a crime of violence, and he has at least two prior felony convictions for crimes of violence, King is a career offender, pursuant to § 4B1.1(a). Accordingly, pursuant to § 4B1.1(b)(C), his offense level is increased to 32. Since King has accepted responsibility for his offense, pursuant to § 3E1.1, his offense level is decreased to a total offense level 29, which combined with a criminal history category is VI, results in an advisory guidelines range of 151 to 188 months' imprisonment.

In his sentencing memorandum, King generally disagrees with the application of the career offender enhancement and states his belief that he should be sentenced in accordance with the PSR's initial calculations without regard to the career offender guidelines. King cites no authority in support of this position, nor could he. The first step in any sentencing decision is "correctly calculating the applicable Guidelines range. . . ." *United States v. Welton*, 583 F.3d 494, 198 (7th Cir. 2009) (*quoting Gall v. United States*, 128 S.Ct. 586, 596 (2007)). In this case, the appropriately calculated applicable Guidelines range is the career offender Guidelines range

**IV.  ANALYSIS**

**A.  King's History and Characteristics**

King is a violent, dangerous individual who has robbed people, stores, a bank, and drug dealers.  Despite his near constant contact with the criminal justice system since he was a teenager, he has shown no ability or willingness to follow the law or become a productive member of the community.  Instead, he has become more dangerous and more violent.  When he teamed with Austin in the Spring of 2008, he joined the mirror image of himself -- another violent criminal who had earned a reputation for committing robberies.  As the friend who introduced King to Austin told him, he "does what you do," meaning rob people.  PSR at lines 52-53.

Robberies and violence are what King does.  This is borne out by his criminal history.  Since he was sixteen, King has been in and out of prison as the result of his theft, robberies, and violence.  At the age of 17, King committed armed robbery, robbing a woman of her purse while he was armed with a .25 caliber semi-automatic pistol.  PSR at 196-201. A year after he was released from prison, he was caught dealing drugs and sent back to prison.  PSR at 202-207.  In 2006, he was sentenced to four years and six months' imprisonment for committing residential burglary.  PSR at 223-228.  Less than a year after he was released from custody and while he was on parole, King launched on the crime spree with Austin, pepper-spraying one victim during a robbery, committing multiple armed robberies, and threatening violence if his victims failed to comply with his demands.  PSR at lines 230-258.  Even Austin warned Individual A of King's reputation for violence, warning her that King "hurts people" and that "people are scared of him."  *See* Ex. 1 at 25.

In his sentencing memorandum, King claims that his meeting with Austin "has unfortunately changed his life forever," and suggests that but for that meeting, he may have simply remained a

5

street "thug." Def. Mem. at 6. The reality, however, is that King and Austin encouraged each other to do what they do -- commit robberies and acts of violence.

**B.      An Advisory Guideline Sentence is Appropriate.**

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In order to determine the "particular" sentence to impose, the Court must consider the familiar statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines; another is the Commission's policy statements. § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 ( 2007). There are numerous reasons this Court should impose a sentence within the advisory Guidelines range, which the U.S. Probation Officer has calculated as 151 to 188 months' imprisonment.

First, the Sentencing Guidelines are the sole factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, § 3553(a)(*6). See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in

sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread, unwarranted disparities is to give serious consideration to the Guidelines.

Second, the Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007), and that there is "broad" sentencing discretion post-*Booker*. *See United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

Third, deviations from the advisory Guidelines range are also more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors," "normal incidents" of the offense, or simple "disagreement with the culpability assumptions built into the Guidelines." *Id.* at 754. The Seventh Circuit has repeatedly admonished that "factors that are common to offenders with like crimes" are less likely to be substantively reasonable and that "particularized" factors are

needed to justify non-Guidelines sentences. *Id.* at 750. And the district court is not required to address each § 3553(a) factor "in a checklist fashion, explicitly articulating its conclusions regarding each one." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). Nor is the district court required to address each of the specific arguments advanced by counsel, particularly if they are "stock arguments" district court routinely confront at sentencings. *United States v. Martinez*, 520 F.3d 749, 753 (7th Cir. 2008) (court not required to address arguments about defendant's family situation and lack of criminal history, as those are "precisely the types of routine contentions" sentencing court can reject without discussion). *See also United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008) (district court free to reject without discussion sentencing arguments concerning defendant's family ties, seriousness of criminal history, and extent to which defendant accepted responsibility, so long as court considered § 3553 factors).

Finally, as explained below and as will be discussed during the sentencing hearing, the § 3553(a) factors weigh in favor of a sentence within the advisory Guidelines range.

### 1. Need for Sentence Imposed to Reflect Seriousness of the Offense

One of the factors that for the Court to consider is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. See § 3553(a)(2)(A). An advisory Guidelines sentence is sufficient but not greater than necessary to meet these objectives. Section 3553(a)(1) directs courts to evaluate the nature and circumstances of the offense, which, in this case, was a bank robbery involving a threat of death. King and Austin robbed the First Bank and Trust of more than $7,000, threatening death to the bank teller, and using a minor to help ensure the robbery's success. Their actions posed the risk of violence to their victims and to themselves. Moreover, that this bank robbery occurred during a

crime spree of five other robberies demonstrates the need for King's sentence to reflect the seriousness of this particular offense.

### 2. Need for Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

Section 3553(a)(2)(B) directs the Court to consider the need for the sentence imposed to afford adequate deterrence to criminal conduct, beyond the effect of the sentence on King. This broader consideration focuses not on the need to deter the defendant's criminal conduct but on the need to deter criminal conduct generally. The sentence that is imposed should deter others like King from committing crimes like bank robbery. In particular, King's sentence should serve to caution those who, like King, have significant criminal histories that there are serious consequences for this serious crime. Additionally, King has claimed that he committed the robbery out of financial necessity. *See* PSR at 90-91. His sentence should likewise deter those individuals who find themselves in precarious financial circumstances from committing crimes like bank robbery to pay their bills.

### 3. Need for Sentence Imposed to Protect Public from Further Crimes of the Defendant

King's extensive criminal history and repeated incarcerations for violent crimes, including for robberies, demonstrate the need for the sentence imposed to protect the public from further crimes of King. In addition, he was a member of the Black Stone street gang for fourteen years, has a gambling problem, and has habitually smoked marijuana on a daily basis. PSR at 392, 435, 438. He has shown no ability or inclination to alter his conduct. Accordingly, § 3553(a)(2)(C) recommends a sentence within the advisory Guidelines range.

9

**C.      King's Sentence For the Bank Robbery Should Run Consecutive to His State Sentence.**

Between May 2, 2008 and May 17, 2008, King committed five robberies on five separate days. He was sentenced to 18 years' imprisonment for each robbery, with the sentences to run concurrently. He has requested that his sentence in the instant matter be imposed to run concurrent with his state sentences. The government respectfully requests that King's sentence for the bank robbery be imposed to run consecutive to his state sentences.

18 U.S.C. § 3584(b) directs the Court to consider the § 3553 factors in deciding whether to impose a consecutive or a concurrent sentence. As explained above, the § 3553 factors counsel in favor of a sentence within the advisory Guidelines range. They likewise weigh in favor of King's sentence to run consecutive to his state sentences.

The seriousness of the crime of bank robbery, the need to promote respect for the law, to provide for just punishment for the offense, as well as the need to deter others from committing similar crimes, would be seriously undermined by a concurrent sentence. There is no indication that the state court knew that King had committed a bank robbery when his state sentence was imposed. Instead, the state sentence reflected the convictions then pending before that judge. Imposing a concurrent sentence in the instant matter, however, would give King a free pass for the serious crime of bank robbery simply because he committed other serious crimes during the same time period. Each of his crimes was a separate act that threatened or involved violence with separate victims and should be treated as such.

## V. CONCLUSION

For the reasons stated, the government respectfully requests that this Court reject the arguments raised by King in his sentencing memorandum and sentence him within the career offender Guidelines range, with the sentence to run consecutive to his state sentence.

Dated: January 26, 2010

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:    /s/ Megan Cunniff Church
Megan Cunniff Church
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-1173